Breitel, J.
(concurring). I concur in result on constraint of Lefkowitz v. Turley (414 U. S. 70). I feel impelled, however, to add the following comments.
Most constitutional rights may be waived and, in particular, the privilege against self incrimination under both the Federal and State Constitutions may be waived (e.g., Lee v. County Ct. of Erie County, 27 N Y 2d 432, 441; People v. Cassidy, 213 N. Y. 388, 393-395; Gardner v. Broderick, 392 U. S. 273, 276; see 8 Wigmore, Evidence [McNaughton Bev.], § 2275). This is undisputed. "While there was once a different view, it is now equally undisputed that one may not be “ coerced ’’into waiving his constitutional privilege by the withholding of a substantial right to engage in one’s occupation or of any other substantial or fundamental exercise of Efe, Eberty, and the pursuit of happiness (Gardner v. Broderick, 392 U. S. 273, 279, supra; Garrity v. New Jersey, 385 U. S. 493, 497).
. Given these premises, it is or should be equally obvious that there will never, or at best rarely, be a waiver of the privilege against self incrimination unless there is some positive consideration or negative withholding to induce or motivate the waiver. Indeed, if this were not so the privilege would become nonwaivable in fact; for no one is Ekely to yield a privilege or right unless, in exchange, some profit, avail or gain is offered or contemplated.
The next logical step is apparent. To distinguish between an acceptable waiver and a coerced waiver of the privilege the losses and gains must be measured. Only those surrenders or withholding of rights or privileges which affect profoundly the individual suggest coercion. Thus, to compel one to waive his privilege on penalty of losing his right to engage in his EveEhood, often one for which he has been especiaHy trained, *274 acquired seniority, or which represents his only skill, has been held to be coercive (Garrity v. New Jersey, 385 U. S. 493, 497, supra; Spevack v. Klein, 385 U. S. 511, 515, 520).
The rule, it is suggested, should not be extended to the withholding of lesser privileges, such as that of a prospective contractor who would bid for municipal or other public contracts. In most instances, and one judges the desirability of rules by their general impact, the loss may involve no more than an alternative or greater profit opportunity for an entrepreneur, quite capable of taking care of himself in our economy. The situation becomes all the more serious when it is recognized that the letting of public contracts is subject to corrupting influence and bargaining. To extend the rule applicable to public employees and officers to public contractors is hardly a sound rational process. It is not good law, good policy, or realistic jurisprudence.
The facts in this very case are illustrative of the undesirable policy extension. The case arises in an ongoing investigation of municipal corruption in a city that has been much troubled for years and is now the subject of various local and State investigations. If the statute and State Constitution were enforced as they read, defendants would not have lost their privilege against self incrimination, had they chosen to forego in the future for a period of five years the very type of contract about which they were being asked to make disclosures. By any test that is hardly unreasonable and does not attain that degree of undue pressure which makes its exaction “ coercive ”. This court has in the past sustained the constitutional and statutory waiver of privileges, even for public officers, until curtailed by rulings of the United States Supreme Court affecting public officers, many of rather low rank (e.g., Canteline v. McClellan, 282 N. Y. 166, 171). (The lowness in rank of thé officer involved is not unimportant. One is entitled to doubt that the Supreme Court would find it coercive to require a Judge, a ranking executive officer, or a member of the Legislature to surrender his privilege against self incrimination in order to qualify for or retain his office.)
Finally, and this is somewhat repetitious, there is something grossly offensive in requiring a municipality to accept as a bidder for public contracts one who refuses to speak freely *275 under oath, and under waiver of immunity, about his conduct on a prior contract with the municipality. It is less offensive to safeguard public officers and employees of low rank and perhaps of long service from the “ coercion ” of waivers of the privilege.
It is also of interest that statutory and constitutional provisions for waivers of privilege were enacted following the widespread corruption scandals in public affairs in the 1930’s (Record, 1938 Constitutional Convention, pp. 2577, 2590, 2593-2594; see State of New York v. Perla, 21 N Y 2d 608, 612). At that time, there was shock and revulsion at the spectacle of public officers retaining their offices although they refused to testify concerning their prior official conduct without the shield of immunity from criminal prosecution. Evidently, the lesson will have to be relearned. And it is no answer that there will still be power to question, but only at the public price of giving the suspected culprit testimonial immunity, and under present statutes, transactional immunity.
Chief Judge Ftjld and Judges Burke and Jones concur with Judge Wachtler ; Judge Breitel concurs in a separate opinion in which Judges Jasen and Gabrielli concur.
Order reversed, etc.